# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

GINA O.[1],

        **Plaintiff,**

v.                             **CIVIL ACTION NO. 2:20cv596**

KILOLO KIJAKAZI,[2]
*Acting Commissioner of*
*Social Security*,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Gina O. seeks judicial review of the Commissioner of Social Security ("Commissioner")'s denial of her claim for disability insurance benefits ("DIB"). Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") erred when determining her residual functional capacity ("RFC") by improperly evaluating the opinions of treating physicians and two state consultative experts. Plaintiff claims remand is necessary to correct these alleged errors, which could result in her being found disabled.

This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this Report recommends that the court AFFIRM the final

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also section 205(g) of the Social Security Act, 42 U.S.C § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No. 16) and DENYING Plaintiff's Motion for Summary Judgment (ECF No. 14).

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on October 25, 2018. R. 15. She alleged a disability onset date of September 14, 2018. R. 181. The agency denied her application, R. 74-79, initially and again on reconsideration, R. 125-27. The Commissioner's ALJ held a hearing for Plaintiff's claims on May 13, 2020. R. 38-73. In an opinion dated June 3, 2020, the ALJ found Plaintiff was not disabled during the period of alleged disability and denied her claim for benefits. R. 15-31. The Appeals Council denied Plaintiff's request for review on September 23, 2020. R. 1-6.

Plaintiff timely filed a Complaint (ECF No. 1) seeking review of the agency's decisions under 42 U.S.C. § 405(g). As the court directed, both parties moved for summary judgment, and the matter is ripe to resolve.

## II.    FACTUAL BACKGROUND

Plaintiff was born June 3, 1966, making her fifty-two on her alleged disability onset date, and thus she is an individual closely approaching advanced age under SSA rules. See R. 30. She completed high school, id., and had previous work as a communications supervisor, telecommunications engineer, and vice president of operations, R. 29.

Plaintiff treated during the relevant period for diabetes, including an episode of hypoglycemia, which resulted in hospitalization. R. 809-11. Although her diabetes produced some symptoms relevant to her claim—including occasional blurred vision—it appeared to be controlled with medication and diet. R. 811, 813. Because neither party relies on opinion testimony from her treating endocrinologist, Dr. Navlin, the records related to diabetes treatment are not reviewed in detail. The relevant portions of Plaintiff's medical history are summarized

here, as are the portions of the administrative proceedings below relevant to her arguments in this court.

**A.    History of Treatment and Evaluation for Migraines.**

In the function report submitted with her claim on December 27, 2018, Plaintiff stated that migraine headaches required her to stay in bed, or in a chair, two to three times per week. R. 260. In a later self-report completed on April 22, 2019, she stated that she continued to have severe migraines "the majority of the days," keeping her in bed and limiting her activity.  R. 285.  She also reported being paranoid, and unable to sleep, search for jobs, or complete household chores. Id. While she was able to drive, shop, prepare meals, and attend church, she wrote that all were limited by her headaches, as well as by feelings of paranoia and depression. R. 285-90.

With respect to the treatment record, in August 2018, Plaintiff reported to her primary care physician, Dr. Nathan Riles, that she suffered from migraines two to three times per week. R. 527. On exam, however, she was neurologically intact. Id. Dr. Riles prescribed medication and directed her to follow up. R. 528.  She continued to report migraine headaches to Dr. Riles throughout 2019 and 2020, which she stated were triggered by bright lights and noise. R. 710-11.  In Dr. Riles's last treatment note of record from January 28, 2020, he observed that Plaintiff still had migraines, but they had not gotten worse. R. 711.  He continued her medication and directed a three-month follow up. Id.  During this time period, Plaintiff did not seek referral to a neurologist, and a record in 2020 reflected that she had traveled on a cruise and was "still functioning as a minister and doing all these duties." R. 708, 710.

In connection with Plaintiff's application for benefits, and at the request of her attorneys, Dr. Riles also completed a check-the-box, fill-in-the-blank medical source statement. R. 713-17. He checked boxes reporting various symptoms associated with her migraines, including nausea,

vomiting, photophobia, throbbing pain, alteration of awareness, mental confusion, inability to concentrate, mood changes, exhaustion, malaise, visual disturbances, impaired sleep, impaired appetite, weight change, pain worse with activity, and cause of avoidance of activity. R. 714. He stated that the headaches occurred three to four times per week and lasted five to seventy-two hours each. Id. Dr. Riles also checked boxes indicating Plaintiff was "incapable of even low stress work." R. 715. Asked to state the reasons for this conclusion, Dr. Riles wrote, "per patient counselor." R. 716. He also checked boxes indicating Plaintiff would be off task twenty-five percent or more each day, and absent more than four days per month. Id. With respect to Plaintiff's prognosis, Dr. Riles described it as "fair," and wrote "will likely need neurologist specializing in headaches." Id.

**B.      History of Mental Health Treatment and Evaluation.**

Plaintiff initially consulted for mental health treatment with Dr. Jordan Romero on October 31, 2018. R. 510-11. She reported severe anxiety, panic attacks, sleep disturbance, and depression, including crying spells. R. 510. Some of this was related to problems at her job where she was involved in a discrimination complaint. Id. Dr. Romero found that she appeared anxious with a constricted mood. Id. He referred her to therapy with a licensed professional counselor, Angela Settle. Id. Plaintiff treated regularly with LPC Settle from November 2018 to January 2020. R. 553, 780. During those visits, she reported varying symptoms, including experiencing anger, irritability, depressed mood, poor appetite, feelings of shame, resentment, social isolation, excessive worry, and difficulty sleeping and concentrating. R. 554. She again related these complaints to a "traumatic situation" involving a dispute, "emotional abuse," and discrimination by former coworkers. Id. LPC Settle eventually diagnosed Plaintiff with unspecified post-

traumatic stress disorder ("PTSD"), generalized anxiety disorder, and major depressive disorder. R. 555. She was prescribed medication and consulted with LPC Settle thereafter on a regular basis.

In a progress note dated December 6, 2018, LPC Settle observed that Plaintiff's mental status exam was largely within normal limits, with logical thought content, linear thought process, and a full affect. R. 562. Plaintiff displayed a depressed mood but was oriented to person, place, and time; she denied any hallucination, suicidal, or homicidal ideation; and her insight and judgment were deemed "sufficient." R. 562. Throughout the rest of her treatment with LPC Settle, Plaintiff made similar complaints of anger, depressed mood, poor appetite, fatigue, social isolation, and excessive worry; however, her mental examinations were also generally consistent, including intact memory, normal behavior, intact attention and concentration, appropriate judgment, and above-average estimated intelligence. R. 497, 509, 511, 603, 619.

On April 15, 2019, LPC Settle prepared correspondence in connection with Plaintiff's claim for benefits in which she opined that Plaintiff's symptoms "are affecting her ability to consistently resume/maintain employment." R. 663. The letter stated that in LPC Settle's opinion, Plaintiff's mental health "significantly impairs her ability to maintain gainful employment." Id.

On November 13, 2019, Plaintiff consulted with Nurse Practitioner Teashaia Roeske for continuing treatment of her mental health symptoms. R. 821. During her initial visit, she stated that she had been anxious as a result of a "severe issue at work." Id. She stated that she avoided places where she might run into coworkers, and her previous experience of discrimination have resulted in "a decrease in her overall wellbeing." Id. Her status exam was essentially normal with appropriate insight, euthymic mood, logical thought process, and above-average intelligence. R. 823. NP Roeske did note a full and flat affect and observed occasional obsessional or phobic

thought content.  Id.  She prescribed medication, and diagnosed Plaintiff with generalized anxiety, directing her to follow up.  R. 824-25.

At a phone appointment on April 22, 2020, with NP Roeske, Plaintiff stated that her nightmares and sleep had significantly improved.  R. 817.  She still reported feeling some irritability and anxiety.  Id.  Her mental exam was again generally normal with intact memory and attention, judgment and insight and fund of knowledge.  Id.  NP Roeske stated that Plaintiff's PTSD, general anxiety, and insomnia were either stable or improved.  Id.  She was continued on medication and directed her to follow up in one month.  Id.  On March 20, 2020, Plaintiff consulted with NP Roeske for medication management.  She stated that her medication was "working well," and that she did not feel as foggy.  NP Roeske continued her on medication and directed a one month follow up.  R. 818.

In connection with her application for benefits, NP Roeske completed a medical source statement checking boxes to indicate that Plaintiff was moderately limited in her ability to carry out complex instructions and markedly limited in her ability to make judgments on complex work related decisions.  R. 805.  She noted, however, that Plaintiff had no limitations in her ability to understand, remember and carry out simple instructions, or make judgments on simple work-related decisions.  Id.  She was only mildly limited in her ability to understand and remember complex instructions.  Id.  She also checked boxes indicating Plaintiff would be markedly limited in her ability to interact with the public and supervisors but only mildly in her ability to interact with coworkers and moderately limited in her ability to respond appropriately to work situations.  R. 806.  In support of these findings, NP Roeske cited the Plaintiff's display and report of several symptoms related to her diagnosis of generalized anxiety disorder and PTSD, including fatigue, panic, and irritability.  Id.  She also indicated that "Plaintiff reports lack of concentration

throughout the day." Id.  With respect to the source of this information, NP Roeske cited "patient interview." Id.  Finally, the medical source statement checked the box indicating Plaintiff would be off task twenty-five percent or more per day and absent three to four days per month. R. 807.

## C.      Opinion Testimony from State Agency Consultants.

In addition to evidence from her treating providers, the record includes reports from two state agency physicians who reviewed Plaintiff's medical records and offered opinions regarding her limitations. Dr. Andrew Bockner issued his report on January 31, 2019, concluding that Plaintiff had moderate limitations in sustained concentration and persistence related to adaptation. R. 83-85. She had no limitations related to social interaction, understanding, or memory. R. 84. Dr. Bockner also wrote that Plaintiff would be moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work day and work week without interruption, perform at a consistent pace without an unreasonable number and length of rest periods and respond appropriately to work place changes. R. 83-84.  In support of these findings, Dr. Bockner relied upon Plaintiff's history of depression, anxiety, and PTSD. R. 84.  He concluded that, although these conditions were severe, Plaintiff was able to read for enjoyment, maintain a 3.7 GPA in her graduate degree program, and concentrate for two-hour periods in order to complete an eight-hour day. Id. Dr. Bockner observed Plaintiff's record showed abnormalities in mood and affect, but her behavior and memory were normal. R. 85. Dr. Bockner concluded that Plaintiff would need assistance adapting to change unless infrequent or implemented gradually, but he wrote that she would be able to maintain attendance and punctuality with only one or two problems per month. R. 84-85.

At the reconsideration level, Plaintiff's records were again reviewed by Dr. David Deaver, who issued his own assessment of her limitations. R. 102-04. Dr. Deaver generally agreed with

Dr. Bockner's findings, but he also wrote that Plaintiff would be moderately limited in her ability to perform activities within a schedule, maintain attendance and punctuality, and work in close proximity to others or the general public. R. 103. He also concluded she would be moderately limited in her ability to accept instructions and respond to criticism by supervisors or get along with coworkers and peers without being distracted by them or exhibiting behavioral extremes. Id. Dr. Deaver concluded that Plaintiff may not be able to return to previous work, but she would be able to perform work involving simple, routine tasks. R. 98.

**D.      Testimony Before the Administrative Law Judge.**

During the hearing before the ALJ, Plaintiff testified that she completed her graduate degree in May 2019, earning a Master of Theology degree and maintaining a GPA of 3.8. R. 47. She stated she was unable to work due to vision issues and migraine headaches which she stated occurred three to four times per week and lasted between ten and twenty-four hours, despite her medication. R. 48, 65. She reported being able to read on a computer or read a book for approximately forty-five minutes. R. 48. With regard to her activities, she stated she was an associate minister at church, which involved leading worship two to three times per month and staffing a prayer line twice per week. R. 49. She also preached at churches outside of the area several times per year. R. 51. She stated she had traveled to Maryland, Ohio, and North Carolina in the past, but she had not traveled recently because of her mental health symptoms. Id. She testified that her daughter did most of the household chores and cooking but reported spending time with her grandchildren prior to the pandemic. R. 56. She testified extensively about her prior work experience, which was primarily in the technology field, where she supervised as many as 160 employees. R. 58.

The ALJ also received testimony from Vocational Expert (VE) Patricia Murphy.  R. 67. The ALJ first asked the VE to classify Plaintiff's past work, which the VE described as sedentary skilled but performed by the Plaintiff at the medium level based on her testimony.  R. 69.

The ALJ then asked the VE to consider jobs available to a hypothetical person of Plaintiff's age, education, and work background, but who was able to perform work at all exertional levels. Id.  The ALJ's question limited the individual to understanding, carrying out, and remembering simple and some complex instructions "in two hour increments, sufficiently to complete an eight hour workday, in an environment that does not require quota based work, and only occasional interaction with coworkers, the public and supervisors."  R. 69.  The ALJ also specified the environment should be "stable, with occasional changes in work setting, no bright or flickering lights, exposure to unprotected heights or hazardous moving machinery, and no more than moderate noise."  R. 69-70.  The VE testified there were jobs available in the national economy such an individual could perform, identifying linen room attendant (DOT 222.387-030) with 6,000 jobs nationally; laundry aide (DOT 323.687-010) with 55,000 jobs nationally; and stores laborer (DOT 922.687-058) with 10,000 jobs nationally.  R. 71.   Plaintiff's representative then asked the VE to consider a similarly hypothetically limited individual who would miss work two or more days per month or be off task more than fifteen percent of a workday due to marked mental health limitations.  R. 72.  Both limitations would preclude all work.  Id.

E.     **The ALJ's Decision.**

The ALJ determined Plaintiff will meet the insured requirements for DIB through December 31, 2023, making this her date last insured ("DLI").  R. 17.  She had not engaged in substantial gainful activity since September 14, 2018.  Id.  The ALJ then determined that Plaintiff had severe impairments, including diabetes, migraines, and mental health disorders, such as PTSD,

but that none of these impairments met or equaled a listed impairment.  R. 18-21.  The ALJ

determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with

significant postural and mental limitations outlined in detail in the analysis below.  R. 21.

      The ALJ then relied on the VE's testimony to identify jobs consistent with Plaintiff's RFC

to determine that Plaintiff was capable of performing jobs that existed in significant numbers in

the national economy.  R. 30-31.  As a result, the ALJ held Plaintiff had not been under a disability

from her alleged onset date through the date of the hearing.  R. 31.

### III.   STANDARD OF REVIEW

      In reviewing a decision of the Commissioner denying benefits, the court is limited to

determining whether the decision was supported by substantial evidence on the record and whether

the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison

Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence,

but may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.

1966).

      The court does not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d

585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable

minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the [Commissioner's] designate, the ALJ)."  Craig, 76 F.3d at 589.  The

Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and

must be affirmed. <u>Perales</u>, 402 U.S. at 390; <u>Lewis v. Berryhill</u>, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    <u>ANALYSIS</u>

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); <u>see also</u> 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.   20 C.F.R. § 404.1505(a); <u>see</u> 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.   The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

(1)    Is the individual involved in substantial gainful activity?

(2)      Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3)      Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4)      Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5)      Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps but shifts to the Commissioner on the fifth step. Lewis, 858 F.3d at 861 (citing Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

In this case, after conducting the analysis, the ALJ concluded that Plaintiff met the insured status requirements from her alleged disability onset date through her date last insured, December 31, 2023, but had not been under a disability within the meaning of the Social Security Act between the alleged disability onset date and the date of the hearing. See R. 17, 30-31.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity between September 14, 2018, the alleged onset date, and the day of the hearing. R. 17. Although she received significant income after that date, the ALJ concluded it resulted from employment benefits and a lawsuit she filed against her former employer and was not earnings from substantial gainful activity. Id. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "diabetes mellitus, major depressive disorder, generalized anxiety disorder, migraines, and post-traumatic stress disorder." R. 18 (citing 20 C.F.R. 404.1520(c)). At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of impairments that met the severity of one of the listed impairments. R. 18-21. At step four, the ALJ found that Plaintiff could not perform her past work which she described as performed at the medium exertional level. R. 29 (citing 20 C.F.R. §§ 404.1565). The ALJ then crafted an extensively limited RFC designed to accommodate Plaintiff's several impairments. Specifically, she found Plaintiff had the ability to perform a limited range of light work,[3] with the ability to:

> She can understand, carryout, and remember simple and some complex instructions in two-hour increments sufficiently enough to complete an eight-hour work day in an environment that does not require quota based work and only occasional interaction with coworkers, the general public, and supervisors; she must work in an environment where the work is stable with occasional changes in the work setting; she would need to avoid environments with bright or flickering light, exposure to unprotected heights, or hazardous moving machinery; and no more than moderate noise as defined in the SCO.

_____

[3] The RFC contained several exertional limitations as well as the mental limitations. On appeal in this court, Plaintiff raises no issue with respect to the ALJ's assessment of her physical limitations and as a result, this Report does not address them.

R. 21.  At step five, relying on the testimony of the VE after presenting her with this RFC in hypothetical form, the ALJ concluded that jobs exist in significant numbers in the national economy which Plaintiff could perform.  R. 30.  Consequently, the ALJ determined Plaintiff did not have a qualifying disability during the relevant period.  R. 30-31.

Plaintiff now argues the ALJ erred in two ways.  First, she argues the ALJ failed to accommodate limitations found by state agency consultants.  Pl.'s Mem. Supp. Mot. Summ. J. ("Pl's Mem.") (ECF No. 15, at 7).  Second, she argues the ALJ failed to properly weigh the medical opinion evidence of her mental impairments, specifically the opinions of her treating physician, Dr. Riles, and other providers, LPC Settle and NP Roeske.  Id. at 12-19.  Although Plaintiff does not say so directly, the court infers from her Memorandum the suggestion that, had the ALJ resolved either of these issues differently, he would have found her more limited and the resultant RFC would lead to a finding that she was disabled.  As explained in detail below, the ALJ did not err with respect to either of these issues.  Accordingly, there was no error in the ALJ's RFC determination requiring remand.

## A.     The ALJ Relied on Substantial Evidence When Giving Weight to Conflicting Medical Opinion Evidence from Agency and Treating Physicians.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(e)-(f).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  Id. § 1520(b).

In evaluating the evidence in Plaintiff's appeal of a denial of benefits, the court does "not conduct a blank slate review of the evidence," Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute

14

its judgment for that of the Commissioner, Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  Smith, 99 F.3d at 638.  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.  Johnson, 434 F.3d at 653.

For claims like this one, filed after March 27, 2017, the ALJ applies a new regulatory framework to evaluate medical opinions.  The most significant change is that medical opinions from treating sources no longer carry controlling weight.  See 20 C.F.R. § 404.1520c(a).  The ALJ instead considers the "persuasiveness" of all the opinion evidence, 20 C.F.R. § 404.1520c(a), and is only required to explain the most important factors of "supportability" and "consistency," id. § 404.1520c(b)(2).  The ALJ is not required to make detailed findings on evidence she finds neither valuable nor persuasive.  Id.

With regard to "supportability," the new regulations explain that "the more relevant the objective medical evidence in supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. 404.1520c(c)(1).  Evaluating consistency involves the same inquiry:  "The more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be."  Id. § 404.1520c(c)(2).  When the ALJ evaluates the evidence using the proper standard, this court should affirm as long as substantial evidence supports the ALJ's conclusions.  42 U.S.C. § 405(g); Biestok v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  In this case,

the ALJ explicitly cited and followed the new regulations in evaluating Plaintiff's medical evidence. R. 27.

> **1.    The ALJ's finding that limitations imposed by Agency reviewers were only "somewhat persuasive" is supported by substantial evidence.**

Both administrative reviewers, Dr. Bockner and Dr. Deaver, opined on mental limitations imposed by Plaintiff's impairments. R. 83-85, 102-04. The ALJ adopted some of these limitations and rejected others, describing the reasons for her conclusions in detailed written findings. R. 27-28. Specifically, the ALJ agreed that Plaintiff was mildly limited in understanding, remembering, and applying information, and moderately limited in concentration, persistence, and pace finding these restrictions supported by, and consistent with the other medical evidence in the record. R. 19-20. But the ALJ found Plaintiff moderately limited (as opposed to mildly limited) in interacting with others, and mildly limited (as opposed to moderately limited) in adapting or managing herself. R. 20. In doing so, she relied on "objective clinical findings" related to mood, affect, speech, behavior, insight, and judgment. R. 19-20, 27-28, 497, 509, 511, 603. The ALJ also cited Plaintiff's fairly rigorous activities in support of her decision that certain findings were less persuasive. R. 22, 27-28. She specifically referred to Plaintiff's travel, active ministry, and successful graduate studies during the period of alleged disability. R. 27-28, 708-10.

Despite the ALJ's careful delineation of these findings, Plaintiff argues remand is required because the RFC does not account for specific limitations on attendance, punctuality, and interaction with supervisors which both Deaver and Bockner described. Pl.'s Mem. (ECF No. 15, at 9-11). She claims the ALJ's failure to account for, or explicitly reject each limitation described in the administrative findings is error requiring remand. Id. This is incorrect. The ALJ need not account for every limitation contained in administrative findings that she explains were only "somewhat persuasive." R. 27. Moreover, the RFC can account for limitations differently

16

depending on the facts of each case, and no categorical rule forbids accommodations in one domain from addressing multiple administrative findings.  See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).  And the reasons given for concluding a medical opinion is only somewhat persuasive need not be "elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review."  T-Mobile South, LLC v. City of Roswell, GA, 135 S. Ct. 808, 815 (2015).  Here, the ALJ explained her reasons for finding the administrative opinions only partially persuasive, and the detailed limitations which were imposed in Plaintiff's RFC are supported by substantial evidence.  They adequately address this opinion testimony, and Plaintiff's contrary argument is unpersuasive.

> **2.    The ALJ adequately explained her assessment of opinion evidence from Plaintiff's treating providers.**

Plaintiff next argues the ALJ erred in evaluating opinion evidence from her treating providers, specifically Dr. Riles, NP Roeske, and LPC Settle.  Pl.'s Mem. (ECF No. 15, at 12).  All three providers offered evidence through their contemporaneous treatment records.  Each one also submitted a medical source statement in connection with Plaintiff's application for benefits.  It is the opinion testimony in these medical source statements that Plaintiff claims the ALJ failed to adequately address.  See id. at 13-18.

With respect to Dr. Riles, the ALJ found several severe limitations articulated in his check-the-box medical source statement were "not . . . persuasive."  R. 28.  Specifically, she rejected Dr. Riles's opinion that Plaintiff was incapable of even low stress work, would be off task twenty-five percent or more each workday, and likely absent more than four days per month.  Id.  The ALJ found these opinions neither supported by nor consistent with the record as a whole.  Id.  She observed the Plaintiff's treatment for migraines had been "routine and conservative."  Id.  Indeed, Plaintiff has never seen a neurologist, and she treated exclusively with Dr. Riles, who

acknowledged the likely need for a neurological consult if her headaches did not improve.  R. 716.

The ALJ also noted that the "extreme" limitations Dr. Riles checked off were inconsistent with

Plaintiff's "rather robust activities," including work and work-related travel as an associate

minister.  R. 28-29.

Likewise, NP Roeske's check-the-box limitations suggested Plaintiff would be off task

twenty-five percent or more in a typical workday and absent more than four days per month.

R. 807.  But she found no limitation or only mild limitation in several functional areas, including

understanding and remembering complex instructions.  R. 805.  Much of Plaintiff's mental health

history was linked to her perceptions of emotional abuse and discrimination at her previous

employer.  See 854, 821.  She repeatedly told her providers that she avoided going out for fear of

running into former coworkers.  Eg., R. 821.  Yet NP Roeske found her only mildly limited in

interacting with coworkers.  R. 806.  She did check boxes corresponding to a marked limitation

interacting with the public and supervisors, id., but the ALJ rejected these limits and others in

finding her opinions only partially persuasive, R. 29.  The ALJ again relied upon inconsistencies

between the opinions and other evidence in the record, including Plaintiff's fairly extensive and

productive activities, as well as objective findings recorded by her mental health providers during

their treatment.  The ALJ cited normal observations of Plaintiff's speech, intact judgment and

insight, and her cooperative behavior throughout her course of treatment.  R. 29, 497, 509, 511,

603, 619, 621, 623.

As with Dr. Riles's opinions, Plaintiff complains that the ALJ did not account for, or

explain the reasons why she did not credit NP Roeske's opinion testimony on attendance and

ability to stay on task.  Pl.'s Mem. (ECF No. 15, at 15-16).  But as the review cited above

demonstrates, the ALJ applied the appropriate legal standard, and her conclusion that NP Roeske's opinion testimony was only partially persuasive is supported by substantial evidence.

Finally, Plaintiff argues for error in the ALJ's evaluation of an opinion letter prepared by her counselor, LPC Settle. Pl.'s Mem. (ECF No. 15, at 17-18). Unlike Dr. Riles and NP Roeske, LPC Settle did not complete a check-the-box form, but she prepared a short narrative outlining her opinion. R. 663. She wrote that Plaintiff suffered from various symptoms that were "affecting her ability to consistently resume/maintain gainful employment." Id. Again, the ALJ carefully addressed Settle's opinions, writing that she found them "not persuasive or useful" as they offered no function-by-function assessment. R. 29. The ALJ also noted that LPC Settle attributed her symptoms to work-related stress at her prior job (a fact repeatedly explored in the records of her treatment) yet failed to acknowledge significant improvement since Plaintiff resolved her prior discrimination claim and left that employment. R. 28.

In arguing that the ALJ should have found the opinions more persuasive, Plaintiff addresses only the opinions' failure to provide a function-by-function limit. Pl.'s Mem. (ECF No. 15, at 17). She argues that this is an insufficient basis on which to find the opinion unpersuasive. Id. But she does not point to any useful limit described in the short opinion that is not already accounted for in the detailed and highly restrictive RFC the ALJ crafted. Nor does her argument even address the opinions' inconsistency with the medical records of Plaintiff's improved mental state after separation from her prior employment and the ALJ's citation to her extensive other activity— which included earning a Master's degree, pastoring a church part-time, and leisure travel. R. 28. Indeed, in each of the arguments regarding the opinion testimony, the ALJ pointed to Plaintiff's ability to succeed in an active ministry, as well as her pursuit of, and graduation with, a Master of

Theology degree, attaining a 3.8 GPA. R. 22, 28-29. This is more than substantial evidence to support her assessment of this opinion evidence.

In short, there were conflicts in the evidence before the ALJ, requiring her to evaluate the credibility of the source of each piece of evidence. From the record, she did exactly that, correctly applying the required analysis as to supportability and consistency. Because the ALJ's decision to give little weight to certain opinions of Plaintiff's treating physicians and more weight to the state agency consultative psychologists was supported by substantial evidence, those decisions do not warrant remand.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 16), DENY Plaintiff's Motion for Summary Judgment (ECF No. 14), and AFFIRM the final decision of the Commissioner.

## VI.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

    2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

    The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

                          /s/

Douglas E. Miller

United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

December 9, 2021